# United States District Court
### Northern District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BURTON O. BENSON,<br><br>Defendant. | Case No.: CR-12-00480 (KAW)<br><br>ORDER RE MOTION TO REVOKE PRETRIAL RELEASE; MODIFICATION OF PRETRIAL RELEASE CONDITIONS |

## I. BACKGROUND INFORMATION

Defendant Burton O. Benson was charged by indictment with violations of 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud), 18 U.S.C § 1343 and 2 (Wire Fraud), and 18 U.S.C. § 1341 and 2 (Mail Fraud) on June 21, 2012. Defendant was granted pretrial release on June 22, 2012 on a $500,000 bond, $400,000 of which was unsecured, and $100,000 of which was secured by cash, signed by Defendant. The charges in the indictment are related to the alleged theft of $500,000 from his company's pension plan. The bond contains conditions of release including, but not limited to, the condition that Defendant shall not commit any federal, state, or local crime.

A Second Superseding Indictment filed March 27, 2014 charges Defendant with additional thefts of Plan assets totaling more than $2 million. The Government contends that most of that money was used to pay Defendant's personal debt to the James River Development Company. The Second Superseding Indictment alleges that Defendant and other individuals and entities, including Bay Estates Group ("BEG") guaranteed $4 million from James River to purchase an option to buy the Port of St. Croix. That option expired, and the loan went into default in December 2004.

United States District Court
Northern District of California

1    On May 9, 2014, the United States filed a Motion to Revoke Defendant's Pretrial Release

2   pursuant to 18 U.S.C. § 3148 for violations of his pretrial release condition that he not commit

3   another federal crime. On May 19, 2014, Defendant filed an Opposition to the motion.

4    On May 23, 2014, the district court, in the related civil case, granted the Government's

5   preliminary injunction enjoining Defendant and his agents, brokers, attorneys, entities owned or

6   controlled by Defendant, and all those acting in concert or participating with Defendant from

7   acting as the Profit Sharing Plan ("the Plan")'s trustee and/or fiduciary and from taking other

8   actions relating to the Plan. (Order Granting Preliminary Injunction, *United States v. Burton*

9   *Orville Benson*, Case No. 14-cv-02071-YGR (N.D. Cal. May 23, 2014), ECF No. 26.) Thereafter,

10   on May 27, 2014, the district court appointed an independent fiduciary to manage the Plan and the

11   Plan assets under 18 U.S.C. §§ 1345(a)(2)(B)(ii) and 1345(b). (Order Appointing Independent

12   Fiduciary, *United States v. Burton Orville Benson*, Case No. 14-cv-02071-YGR (N.D. Cal. May

13   27, 2014), ECF No. 31.) Both orders remain in effect, unless otherwise modified, through the

14   conclusion of both the related civil and the instant criminal cases. (May 23, 2014 Order at 4:10-

15   12.)

16    On May 28, 2014, this court issued an order requiring the parties to meet and confer

17   regarding whether the district court's orders impose sufficient conditions that can be added to the

18   conditions of Defendant's pretrial release to mitigate the danger Defendant may pose to the

19   community, i.e., Plan participants. The court requested that, if the parties were able to reach an

20   agreement, the parties were to file a stipulation to modify the conditions of Defendant's pretrial

21   release setting forth the specific modifications to be added along with a proposed order. If the

22   parties could not reach an agreement on the issue, they were directed to submit a joint status

23   update identifying the reasons why the motion to revoke Defendant's bail should still be heard.

24    On May 30, 2014, the government filed a request to keep the June 2, 2014 hearing on its

25   motion to revoke pretrial release on calendar, stating that the parties met and conferred regarding

26   possible conditions of release, but were unable to agree upon conditions. In particular, the United

27   States requested the Court to making findings of violations so that it can forfeit the $500,000 bond

28

1  and begin to recover assets for pension plan participants. In addition, the United States would like

2  the defendant to be ordered to stay away from ERG and ERG Aerospace and its current and

3  former employees with possible exceptions for family members. Defense counsel insisted that

4  Burton Benson be permitted to maintain office space at the company to conduct personal matters.

5  Finally, the government would like the defense to disclose the location of the outstanding

6  $300,000 official bank checks. Defense counsel informed the government that they are with ERG

7  Aeropace and that Bryan Leyda is acting CEO of ERG Aerospace. The government also stated

8  that Counsel for ERG Aerospace does not know where the checks are and counsel for Mr. Leyda

9  has not said whether he knows where they are.

10      On May 30, 2014, Defendant filed a separate status statement stating that the parties met

11  and conferred, but were unable to resolve the matter regarding modifications of Defendant's

12  conditions of pretrial release. Defendant also provided a list of release conditions that it believed

13  would address any danger of economic harm. Specifically, he requested that, in addition to a

14  condition that Defendant fully comply with the terms of the preliminary injunction in the related

15  civil case, the following conditions be imposed: (1) that Defendant will fully comply with the

16  terms of the preliminary injunction; (2) Defendant has resigned as CEO and CFO of ERG

17  Aerospace effective May 30, 2014;[1] (3) Defendant will not be involved in the operations of ERG

18  Aerospace; (4) An interim CEO and CFO will run ERG Aerospace and handle its financial

19  matters and operations; ERG Aerospace has retained a tax attorney to handle its tax matters.

20      With respect to the government's concern about the outstanding $300,000 in cashier's

21  checks held by ERG Aerospace, Defendant contends that he does not have the checks in his

22  possession and that the government should address this issue with counsel for ERG Aerospace

23  and counsel for the interim CEO.

24      On June 2, 2014, a hearing was held on the Government's motion for revocation of

25  Defendant's pretrial release pursuant to 18 U.S.C. § 3148.  Defendant was present, out of custody,

26

27  [1] A copy of Defendant's letter of resignation to ERG Aerospace Corporation, dated May 30, 2012,
    was attached to the statement as Exhibit A.

28  ORDER ON MOTION TO REVOKE PRETRIAL RELEASE; MODIFICATION OF PRETRIAL RELEASE
    CONDITIONS

and represented by Ismail Ramsey.  Assistant United States Attorney Keslie Stewart appeared on behalf of the Government.  Pretrial Services Officer Carol Mendoza was also present. Defendant requested that the hearing be continued because the government's Victim Witness Coordinator sent a letter to the victims in this case, i.e., Plan participants, erroneously informing them that the hearing had been rescheduled. As such, the victims were denied their right to notice of the proceeding and to participate in the proceeding as set forth in 18 U.S.C. §3771(a). Defendant also requested a continuance to give him an opportunity to file a motion for a competency examination. Further, in light of the government's statements suggesting that it intends to file new charges against Defendant for Tax Evasion, Defendant requested an in camera hearing with the court to provide additional information that could impact the court's decision on the government's motion while preserving his Fifth Amendment rights.[2]  After some discussion on the record, the court agreed to continue the hearing on the government's motion to June 9, 2014 and directed the government to make sure that the victims were properly notified of the hearing date. The government agreed to set up a conference call for out-of-state victims could appear at the hearing by phone.

On June 9, 2014, a hearing was held on the Government's motion for revocation of Defendant's pretrial release pursuant to 18 U.S.C. § 3148.  Defendant was present, out of custody, and represented by Ismail Ramsey.  Assistant United States Attorney Keslie Stewart appeared on behalf of the Government.  Pretrial Services Officer Carol Mendoza was also present. In addition, the following participants appeared at the hearing: Burt Hutchinson (in person), Charles Bianchi (via telephone conference call), Alfred Dynarski (via telephone conference call), David Wilkerson (via telephone conference call), and Jose "Joey" Hernandez (via telephone conference call).[3]

---

[2] Defendant met with the court *in camera* on June 6, 2014. After the meeting, the court was satisfied that Defendant does not have possession or control of the checks and requested that defense counsel contact the attorney for ERG Aerospace and ask him to participate in the continued motion hearing on June 9, 2014.

[3] When given a chance to speak at the hearing, each Plan Participant declined.

1    Victim Coordinator Maureen French and counsel for ERG Aerospace, Jeff Setness, were also on

2    the telephone conference call.

3          For the reasons set forth below, the Court finds that there is probable cause to believe that

4    Defendant violated the conditions of his pretrial release, but DENIES the motion to revoke his

5    pretrial release because there are conditions that can be imposed to reasonably mitigate the danger

6    Defendant poses the Plan participants. Accordingly, Defendant's conditions of pretrial release are

7    modified as described below.

8                                    **II.  LEGAL ANALYSIS**

9          The Bail Reform Act requires that in a pretrial posture, the government bears the burden

10   of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be

11   mitigated through the imposition of conditions of release.  A person facing trial generally shall be

12   released if some "condition, or combination of conditions . . . [can] reasonably assure the

13   appearance of the person as required and the safety of any other person and the community."  18

14   U.S.C. § 3142(c).  The Bail Reform Act "mandates release of a person facing trial under the least

15   restrictive condition or combination of conditions that will reasonably assure the appearance of

16   the person as required." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985)

17         After release, the Government may initiate a proceeding for revocation of an order of

18   release by filing a motion with the district court. 18 U.S.C. § 3148(b).  The judicial officer shall

19   enter an order of revocation and detention if the court makes a finding that there is either

20   "probable cause to believe that the person has committed a Federal, State, or local crime while on

21   release; or "clear and convincing evidence that the person has violated any other condition of

22   release; and" finds that either "there is no condition or combination of conditions of release that

23   will assure that the person will not flee or pose a danger to the safety of any other person or the

24   community" or "the person is unlikely to abide by any condition or combination of conditions of

25   release." 18 U.S.C. § 3148(b).

26   ///

27   ///

28
     ORDER ON MOTION TO REVOKE PRETRIAL RELEASE; MODIFICATION OF PRETRIAL RELEASE
     CONDITIONS
     CR-12-00480 (KAW)                              5

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**A. Commission of a Crime and Violation of Conditions of Release**

The government's motion asserts, among other things, that Defendant has committed another federal crime while on pretrial release by continuing to use pension plan assets for his personal benefit, making false statements to an IRS Agent, and transferring of funds from his personal account to avoid a tax levy, all to evade paying taxes. Specifically, the government alleges that Defendant submitted false statements to the IRS and sent false documents to the IRS in violation of 18 U.S.C. §1001. (Mot. at 1, 2.) This allegation is supported by the Declaration of IRS Special Agent Ryer submitted in support of the motion stating that:

> On July 27, 2012, upon request from the IRS for updated tax returns, Benson filed a final corporate return for the period January 2006 through June 2006 purporting no tax was due and checked the box for final return. In order to evade the payment of the substantial tax liabilities incurred by his corporation ERG, Benson devised a scheme to shut down his business and start a new business under a different name and tax identification number. ERG Aerospace does the same business in the same location using the same equipment to the same customers and retained the same employees. On August 16, 2012, Defendant signed as President of ERG an IRS Form 966, Corporate Dissolution or Liquidation, which he sent to the IRS Service Center. Benson claimed on the Form 966 that ERG was dissolved on June 30, 2006. On or about August 17, 2012, Benson sent the IRS a copy of a State of California "Certificate of Dissolution to Dissolve" and a "Certificate of Election to Wind Up and Dissolve," both of which Benson signed under penalty of perjury and backdated to June 30, 2006. Neither of these Certificates, which have a form revision date of 12/2010, were ever actually filed with the California Secretary of State Office as purported by Benson. The fictitious dissolution of ERG was an attempt by Benson to evade the payment of his taxes.

(Ryer Decl. ¶ 25.)

Defendant denies making false statements to the IRS, but his arguments are not credible. By Defendant's own admission, on July 31, 2012, he met with an IRS Agent and then sent the agent a copy of a State of California Dissolution Certificate on August 17, 2012 indicating a dissolution date of June 30, 2006. IRS Special Agent Ryer describes the certificate submitted by Defendant as "backdated to June 30, 2006," but defendant contends that the document was not backdated because the date on the form refers to the date of dissolution not the date of his signature. Even if Defendant did not intend to indicate that the date of execution was June 30, 2006, this distinction misses the point.

ORDER ON MOTION TO REVOKE PRETRIAL RELEASE; MODIFICATION OF PRETRIAL RELEASE CONDITIONS

CR-12-00480 (KAW)                                              6

ERG was suspended in 2003 by the Franchise Tax Board for failure to pay taxes. Therefore, the corporation could not have been dissolved in 2006. For that reason, the dissolution certificate was never filed with the California Secretary of State because it had been rejected three times. (Opp'n at 8.) Thus, there is probable cause to believe that Defendant made a false statement to the IRS Agent, in violation of 18 U.S.C § 1001, during the meeting in July 2012 when he told the IRS Agent that ERG had been dissolved, when he knew it had not. It is reasonable to conclude that he then sent a letter to the IRS agent confirming the false statement, for no other purpose than to mislead the agent into believing that the corporation had been dissolved since 2006 when, in fact, it had not.  Defendant's argument that his letter did not "represent that the certificate had been filed or submitted to the California Secretary of State" is not well taken.  (Opp. at 8:3-4.) There was a false statement on the dissolution form itself indicating the dissolution date of June 30, 2006, and since Defendant sent the certificate to the IRS knowing that the certificate was never filed, there is also probable cause that Defendant committed mail and/or wire fraud by sending, through the mail or over the wires, [4] false and misleading documents to the IRS to avoid paying taxes.

In addition, there is probable cause to believe that Defendant transferred funds from his personal account to New Process Industries ("NPI"), another company owned by Defendant, to avoid a tax levy. According to Agent Ryer, on July 23, 2012, Defendant, as President of NPI, signed a new signature card for a Vanguard account ending in 3846 that had been open since 2004. On that same day, one month after he had been indicted and released on bail in this case, Defendant modified the tax identification number of NPI to a false tax identification number. On August 21, 2012 the IRS issued a levy to Vanguard. (Ryer Decl. ¶ 24.) "Within a few days of this levy, Defendant moved $94,000 out of two of his Vanguard accounts and into the NPI account ending in 3846." (*Id.*)

---

[4] It is not entirely clear to the court whether the letter was mailed or sent electronically by Defendant to the IRS agent.

ORDER ON MOTION TO REVOKE PRETRIAL RELEASE; MODIFICATION OF PRETRIAL RELEASE CONDITIONS

1    Defendant acknowledges that a personal check for $70,000 and an ERG Aerospace check

2 for $24,000 were written and deposited into the NPI account amounting to a $94,000 deposit.[5]

3 But Defendant argues that the ERG Aerospace check is irrelevant and says nothing about the

4 personal check. Instead, he argues that "there is nothing inherently nefarious about this

5 transaction – on its face, a transfer to another Benson entity does not reflect an evil motive."

6 (Opp'n at 14.) Defendant's argument is not persuasive. Exhibit 5 to Ryer's declaration consists a

7 copy of a $70,000 check written on a personal Vanguard account, signed by Defendant, dated

8 August 25, 2012, four days after the tax levy was issued to Vanguard, and a $24,000 check

9 written on an ERG Aerospace Vanguard account signed by Melody Carter, dated August 22, 2012

10 – the day after the tax levy was issued to Vanguard. Therefore, there is probable cause to believe

11 that Defendant willfully wrote checks from the levied Vanguard accounts to the NPI account with

12 intent to evade the IRS tax levy in violation of 26 U.S.C. §7201.

13    According to Agent Ryer, an IRS levy dated August 21, 2012 attached to one of

14 Defendant's accounts ending in 9133 at Vanguard. Then, "on or about September 20, 2012, the

15 IRS received two checks in levy proceeds totaling more than $86,000 from the 9133 account."

16 (Ryer Decl. at 7:17-19.) Then, on September 24, 2012, Benson withdrew three large official bank

17 checks from that Vanguard account totaling more than $425,000. (*Id*. at 7:19-21, Exhibit 7.)

18 Those withdrawals removed almost all of the money from the account, and the checks were not

19 immediately deposited elsewhere.  They were held outside the banking system for three and four

20 months and then deposited into accounts at USAA and the Bank of St. Croix. Defendant had set

21 up the account at the Bank of St. Croix six months earlier in the name of the ERG Retirement

22 Trust, using the mailing address for ERG at 900 Stanford Avenue in Oakland and a tax

23 identification number on the bank signature card that is not recognized by the IRS. (*Id*. at 7:20-

24

25 [5] For some reason, the IRS did not identify NPI as Defendant's nominee and alter ego until the
middle of 2013 even though, according to Defendant, he filed income tax returns for NPI listing
26 himself as one of the owners for years. This, however, is not necessarily relevant to the probable
cause determination here. If anything, it bolsters the court's finding of probable cause to the extent
27 that it is likely that Defendant knew that NPI account had not yet been targeted and levied by the
IRS, and he transferred funds from the levied Vanguard accounts into the non-levied NPI account.

28 ORDER ON MOTION TO REVOKE PRETRIAL RELEASE; MODIFICATION OF PRETRIAL RELEASE
CONDITIONS

8:2.) Defendant argues that transferring assets without evidence of bad purpose, evil motive, or corrupt design, is not tax evasion. The court agrees, but finds, in this case, that there is probable cause to believe that Defendant withdrew over $400,000 from levied Vanguard accounts, held them for three and four months and then deposited them into other non-levied accounts to evade the tax levy in violation of 26 U.S.C § 7201.

The government's motion contains allegations that several other crimes were committed by Defendant since he was released on bail in this case. However, the moving papers do not sufficiently tie together the allegations with the declarations and evidence submitted in support of the motion. This required this court to do a great deal of piecing together the evidence to find probable cause. Nevertheless, the court has pieced together sufficient evidence submitted by the government to make the probable cause findings above, and declines to make any further findings because, ultimately, it is not necessary. The court finds probable cause to believe that Defendant violated a standard condition of his pretrial release by committing the federal crimes discussed above.

This finding creates a rebuttable presumption that no condition or combination of conditions will assure that Defendant will not pose a danger to the safety of any other person or to the community – in this case, the Plan participants. The next step is to determine whether there are conditions or a combination of conditions that the court can impose to mitigate the risk of danger to the Plan participants. The court believes there are.

**B. Conditions can be imposed to mitigate the risk of danger to the Plan participants.**

As discussed above, on May 23, 2014, the district court issued a preliminary injunction enjoining Defendant and his agents, brokers, attorneys, entities owned or controlled by Defendant, and all those acting in concert or participating with Defendant from acting as the Profit Sharing Plan ("the Plan")'s trustee and/or fiduciary and from taking other actions relating to the Plan. More specifically, the preliminary injunction retrains and enjoins Defendant (including, without limitation, any employees and/or family members acting in concert or participation with Defendant) from the following:

ORDER ON MOTION TO REVOKE PRETRIAL RELEASE; MODIFICATION OF PRETRIAL RELEASE CONDITIONS
CR-12-00480 (KAW)                                    9

United States District Court
Northern District of California

1.   Acting as the Plan's trustee and/or fiduciary to obtain any money under the custody or control of the Plan and Plan Participants;

2.   Accepting, transferring, alienating, encumbering and/or disposing of, or otherwise taking any action with respect to monies received from the Plan and Plan Participants;

3.   Withdrawing, transferring, removing, dissipating, and/or disposing of, any funds presently deposited or held on Defendant's behalf and/or behalf of the Plan by any financial institution, trust fund, brokerage agency or other financial agency, public or private, including but not limited to any and all fund held in specific accounts listed in the order at page 2 lines 10-19.

4.   Withdrawing, transferring, removing, dissipating, and disposing of funds held on behalf of Defendant in bank accounts specified in the order at page 2 lines 22-26.

5.   Defendant may petition the court for an order permitting Defendant to use funds earned in the future, deposited at a financial institution for reasonable and ordinary living expenses, in an amount not to exceed that determined by the court, provided, however, that Defendant and the United States, a verified disclosure of the sources of such future income and liabilities documenting his financial condition as outlined in paragraphs 55-57 in the form attached to the order as Exhibit 1.

On May 27, 2014, the district court appointed an independent fiduciary to manage the Plan and the Plan assets under 18 U.S.C. §§ 1345(a)(2)(B)(ii) and 1345(b). Both orders remain in effect, unless otherwise modified, through the conclusion of both the related civil and the instant criminal cases. The preliminary injunction addresses most of the concerns raised by the government, and a condition that Defendant fully complies with the terms of the preliminary injunction can be added to his conditions of pretrial release.

In its request to keep the hearing on the motion to revoke pretrial release on calendar, the government argued that risk of harm to the Plan participants continued to exist and needed to be addressed at the hearing. Specifically, the government was concerned about the $300,000 in cashier's checks that Defendant contended were being held by ERG Aerospace. Indeed,

1   Defendant's son, Bradley Benson, admitted to the government that he wrote those checks at

2   Defendant's direction. As stated above, however, the court is satisfied that Defendant is not in

3   possession or control of the checks. Further, at the hearing, counsel for ERG Aerospace appeared

4   by phone and assured the court that $250,000 of the checks are currently being held in a safe at

5   ERG Aerospace. About $50,000 was spent on ERG Aerospace operating expenses. Counsel for

6   ERG Aerospace assured the court that acting CEO, Brian Leyda, will prepare a list of the checks

7   as well as photocopies of them and provide them to the parties. He further stated that the checks

8   will remain in the safe until a stipulation regarding placing them in an escrow account and

9   requiring that they be released only pursuant to court order is filed. The court believes that this

10  arrangement will prevent Defendant from having access to the checks and, therefore, sufficiently

11  mitigates the risk that he will be able to do anything with them.

12      In addition, the government raised a concern regarding assets not yet encumbered by the

13  IRS liens. Specifically, the government argued that there is reason to believe that one of those

14  unencumbered assets was transferred by Defendant to EM&B – a property located at 15260

15  Southshore Drive, Truckee, California.  According to Agent Ryer, Defendant holds title to several

16  properties in California, and one property in the U.S. Virgin Islands in the name of Acacia

17  Properties, L.P. Acacia Properties holds title to Defendant's residence in Orinda, California. A

18  Certificate of Limited Partnership for Acacia Properties from the California Secretary of State

19  filed in 1997 lists Burton and Elizabeth Benson as the general partners of Acacia Properties.

20  Peter Sproul, Esq. is listed as Acacia Properties' agent for service of process in 1997. (Ryer Decl.

21  ¶ 31.) On August 21, 2012, the IRS recorded liens on five properties owned in the name of Acacia

22  Properties, L.P, in Contra Costa County. (*Id*. at 8:4-5.)

23      On September 12, 2013, Peter Sproul, Esq., filed Articles of Organization for EM&B,

24  LLC, with the California Secretary of State. Peter Sproul signed as the organizer of the new

25  company. A Grant Deed was signed by Defendant on September 17, 2013, as the General Partner

26  of Acacia Properties, L.P., transferring title to the property on Donner Lake from Acacia

27  Properties to EM&B, LLC, "for value received." The IRS had not recorded a lien on that Donner

28

ORDER ON MOTION TO REVOKE PRETRIAL RELEASE; MODIFICATION OF PRETRIAL RELEASE
CONDITIONS
CR-12-00480 (KAW)                      11

United States District Court
Northern District of California

United States District Court
Northern District of California

Lake property owned by Acacia Properties. (*Id*. at 5-6.) Also, on September 17, 2013, Defendant and his wife gifted 1% interest in EM&B to their three sons, making their three sons the owners of EM&B. Based on this ownership, Agent Ryer believes that EM&B are the first letters of each of Defendant's three sons – Eric, Mark, and Bradley. Bradley Benson is listed as the managing member of EM&B. On September 19, 2013, Peter Sproul wrote to the Placer County Clerk-Recorder enclosing the grant deed and a preliminary change of ownership report regarding 15260 S. Shore Dr., Truckee, California. (*Id*. at 20-26.)

Agent Ryer believes that the transfer of the Donner Lake Property out of Acacia Properties' name and into EM&B's name was done to evade seizure of the property by the IRS, since the IRS had already attached levies to the other Acacia Properties and bank accounts. At the hearing, the government expressed concern that the Donner Lake property might have been purchased using Plan assets and was missed by the IRS when it was recording liens against other Acacia Properties. Thus, the government requested that the Defendant not be allowed to do anything to dissipate assets in EM&B, including the property located at 15260 Southshore Drive, in Truckee, California. The court views this request is reasonable under the circumstances discussed above showing that it is likely that Defendant has been attempting to evade the IRS tax levies in several ways in violation of 26 U.S.C. §7201.

In light of everything discussed above, the court hereby modifies Defendant Burton O. Benson's conditions of Pretrial Release to add the following conditions to those previously imposed on 6/22/12:

1.      Defendant shall fully comply with the Preliminary Injunction Order in *United States v. Burton Orville Benson*, Case No. 14-cv-02071-YGR (N.D. Cal. May 23, 2014), ECF No. 26 which enjoins and restrains him and his agents, brokers, attorneys, entities owned or controlled by Defendant, and all those acting in concert or participating with Defendant from doing the following:

      a.   Acting as the Plan's trustee and/or fiduciary to obtain any money under the custody or control of the Plan and Plan Participants;

United States District Court
Northern District of California

b. Accepting, transferring, alienating, encumbering and/or disposing of, or otherwise taking any action with respect to monies received from the Plan and Plan Participants;

c. Withdrawing, transferring, removing, dissipating, and/or disposing of, any funds presently deposited or held on Defendant's behalf and/or behalf of the Plan by any financial institution, trust fund, brokerage agency or other financial agency, public or private, including but not limited to any and all fund held in specific accounts listed in the order at page 2 lines 10-19.

d. Withdrawing, transferring, removing, dissipating, and disposing of funds held on behalf of Defendant in bank accounts specified in the order at page 2 lines 22-26.

e. Defendant may petition the court for an order permitting Defendant to use funds earned in the future, deposited at a financial institution for reasonable and ordinary living expenses, in an amount not to exceed that determined by the court, provided, however, that Defendant and the United States, a verified disclosure of the sources of such future income and liabilities documenting his financial condition as outlined in paragraphs 55-57 in the form attached to the order as Exhibit 1.

2.      Defendant shall stay at least 150 yards away from ERG Aerospace or other ERG locations including 900 Stanford Avenue, Oakland, California. If he needs to clear out his personal belongings from his former office, he is directed to make a request through counsel to have Ms. Carter and or Mr. Leyda gather up his personal property and arrange for them to be delivered to Defendant's home.

3.      All communications between Defendant and ERG, ERG Aerospace, and the Plan Participants are to be made through counsel for ERG and/or Defense Counsel.

4.      Defendant may not do anything to dissipate the EM&B property located at 15260 Southshore Drive, Truckee, CA.

///

///

///

ORDER ON MOTION TO REVOKE PRETRIAL RELEASE; MODIFICATION OF PRETRIAL RELEASE CONDITIONS
CR-12-00480 (KAW)                                    13

### III.   CONCLUSION

In light of the above, the motion to revoke Defendant's pretrial release is DENIED. Defendant's pretrial release is hereby modified as set forth above.

IT IS SO ORDERED.

DATED: June 13, 2014

_____
KANDIS A. WESTMORE
United States Magistrate Judge

ORDER ON MOTION TO REVOKE PRETRIAL RELEASE; MODIFICATION OF PRETRIAL RELEASE CONDITIONS
CR-12-00480 (KAW)                                    14